O

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | |
|---|---|
| JOEL E. DUENAS, | Case No. EDCV 14-01399-DFM |
| Plaintiff, | |
| v. | MEMORANDUM OPINION AND ORDER |
| CAROLYN W. COLVIN, Acting Commissioner of Social Security, | |
| Defendant. | |

Plaintiff Joel E. Duenas ("Plaintiff") appeals the final decision of the Administrative Law Judge ("ALJ") denying his applications for disability benefits. For the reasons discussed below, the Court concludes that the ALJ did not provide either specific and legitimate reasons for giving little weight to the opinion of Plaintiff's treating physician or clear and convincing reasons for discrediting Plaintiff's testimony. The ALJ's decision is therefore reversed and the matter is remanded for further proceedings consistent with this opinion.

## I.

## FACTUAL AND PROCEDURAL BACKGROUND

On April 25, 2011, a truck hit Plaintiff on the side of a freeway while he was helping a friend fix a blown tire. Trucker dead, pedestrian hurt in crash,

Riverside Press-Enterprise, Apr. 26, 2011, http://www.pe.com/articles/year-612510-old-driver.html. On August 5, 2011, Plaintiff filed applications for Social Security disability insurance and supplemental security income benefits, alleging that he became unable to work on March 25, 2011. Administrative Record ("AR") 174-82.[1] After a hearing in February 2013, the ALJ found that Plaintiff had the following severe impairments: degenerative disc disease of the lumbar and thoracic spine; corrected fractured nose; bone bruise of the right knee; and right shoulder issues, including a cyst in the right shoulder. AR 25. The ALJ found that despite these impairments, Plaintiff retained the residual functional capacity ("RFC") to perform a range of light work with several additional limitations. AR 28-29. After concluding that Plaintiff was unable to perform his past relevant work as a security guard, door-to-door salesperson, and construction worker, the ALJ concluded that Plaintiff was not disabled because Plaintiff was capable of working as a gate guard, call-out operator, or surveillance systems monitor despite his impairments. AR 37-39.

## II.

## ISSUES PRESENTED

The parties dispute whether the ALJ erred in: (1) rejecting the opinion of Plaintiff's treating physician; and (2) evaluating Plaintiff's credibility. See Joint Stipulation ("JS") at 4.

///

///

---

[1] The record is unclear about why Plaintiff claimed a disability onset date one month before the accident. Plaintiff indicates that he stopped working on March 25, 2011 "because of [his] condition(s)," which he indicates are "injuries due to auto accident." AR 212; see also AR 272 ("The claimant last worked as a security guard on April 25, 2011 and stopped working because he was hit by a truck.").

# III.

## DISCUSSION

**A.   Plaintiff's Treating Physician**

   **1.   Background**

From May 2011 through the February 2013 hearing, Plaintiff was treated by Dr. Naresh (Nick) Sharma, an orthopedist. Dr. Sharma initially evaluated Plaintiff a month after the accident, diagnosing him with lumbar sprain and strain with possible lumbar radiculopathy, right shoulder impingement with possible rotator cuff pathology, and cervical sprain and strain. AR 317. Dr. Sharma ordered MRIs and prescribed pain medications and physical therapy. AR 318-19. A month later, Dr. Sharma re-evaluated Plaintiff after reviewing the MRI results and concluded that "I do not think he is a surgical candidate." AR 325. Dr. Sharma prescribed continued pain medications and physical therapy. Id. Dr. Sharma continued to evaluate and treat Plaintiff on a near-monthly basis throughout the rest of 2011, 2012, and into 2013. AR 326-48, 483-502, 576-88.

In February 2013, Dr. Sharma completed a one-page "Physical Capacities Evaluation." AR 504. As the ALJ noted, Dr. Sharma found limitations "that would preclude [Plaintiff] from working at the level of substantial gainful activity." AR 36. Dr. Sharma's treatment reports also frequently included the assessment that Plaintiff was not able to work. See, e.g., AR 495 ("[Plaintiff], I feel, is not capable of returning to any work."); AR 582 ("I do not think he will be able to return to any gainful occupation.").

After giving great weight to the contradictory findings of a non-examining medical expert, the ALJ gave "little weight" to Dr. Sharma's opinions, finding that they were "brief, conclusory, and inadequately supported by clinical findings." AR 36. The ALJ continued by stating that "[a]s an opinion on an issue reserved to the Commissioner," Dr. Sharma's

1  opinions are "not entitled to controlling weight . . . and are not given special

2  significance." Id. The ALJ went on to specify how Dr. Sharma's opinions were

3  inconsistent with the objective medical evidence, "which shows [Plaintiff] to

4  be treated conservatively with prescription medications, epidural injections,

5  and physical therapy despite complaints of pain . . . [with] no surgery

6  recommended for his conditions." Id. Further, the ALJ noted, Dr. Sharma's

7  opinions are "also inconsistent with [Plaintiff's] admitted activities of daily

8  living." Id. Finally, the ALJ noted that Dr. Sharma examined Plaintiff in the

9  context of a personal injury claim, "which affects the credibility and relevance

10  of his opinions." AR 37.

   **2.   Applicable Law**

12      Three types of physicians may offer opinions in Social Security cases:

13  those who directly treated the plaintiff, those who examined but did not treat

14  the plaintiff, and those who did not treat or examine the plaintiff. See 20

15  C.F.R. §§ 404.1527(c), 416.927(c); Lester v. Chater, 81 F.3d 821, 830 (9th Cir.

16  1996). A treating physician's opinion is generally entitled to more weight than

17  that of an examining physician, which is generally entitled to more weight than

18  that of a non-examining physician. Lester, 81 F.3d at 830. Thus, the ALJ must

19  give specific and legitimate reasons for rejecting a treating physician's opinion

20  in favor of a non-treating physician's contradictory opinion or an examining

21  physician's opinion in favor of a non-examining physician's opinion. Orn v.

22  Astrue, 495 F.3d 625, 632 (9th Cir. 2007); Lester, 81 F.3d at 830-31. If the

23  treating physician's opinion is uncontroverted by another doctor, it may be

24  rejected only for "clear and convincing" reasons. See Lester, 81 F.3d 821, 830

25  (9th Cir. 1996) (citing Baxter v. Sullivan, 923 F.3d 1391, 1396 (9th Cir. 1991)).

26  However, "[t]he ALJ need not accept the opinion of any physician, including a

27  treating physician, if that opinion is brief, conclusory, and inadequately

28  supported by clinical findings." Thomas v. Barnhart, 278 F.3d 947, 957 (9th

4

1   Cir. 2002); accord Tonapetyan v. Halter, 242 F.3d 1144, 1149 (9th Cir. 2001).

2   The factors to be considered by the adjudicator in determining the weight to

3   give a medical opinion include: "[l]ength of the treatment relationship and the

4   frequency of examination" by the treating physician; and the "nature and

5   extent of the treatment relationship" between the patient and the treating

6   physician. Orn, 495 F.3d at 631; see also 20 C.F.R. §§ 404.1527(d)(2)(i)-(ii),

7   416.927(d)(2)(i)-(ii).

8          **3.    Analysis**

9          The Court finds that at least three of the reasons offered by the ALJ for

10   giving little weight to Dr. Sharma's opinion are not specific and legitimate.

11   First, although "an ALJ may discredit treating physicians' opinions that are

12   conclusory, brief, and unsupported by the record as a whole . . . or by objective

13   medical findings," Batson v. Commissioner, 359 F.3d 1190, 1195 (9th Cir.

14   2004), the record here does not support the ALJ's finding (AR 36) that Dr.

15   Sharma's opinion was "brief, conclusory, and inadequately supported by

16   clinical findings." Not only has this kind of non-specific language been

17   criticized by the Ninth Circuit, see Embry v. Bowen, 849 F.2d 418, 421-22 (9th

18   Cir. 1988), the record also does not support the ALJ's finding that Dr.

19   Sharma's opinion was not adequately supported by objective medical findings.

20   In particular, Dr. Sharma's treatment records consistently reflect clinical

21   findings that support the imposed limitations, such as positive straight-leg

22   raising tests. See AR 315, 328, 495, 578. Moreover, a CAT scan of Plaintiff's

23   lumbar spine in 2012 identified a compression fracture of his T8 vertebrae, see

24   AR 400, and an MRI done in 2011 showed a 4-5 mm disk bulge in Plaintiff's

25   lower back, see AR 351. In light of these diagnostic results and Dr. Sharma's

26   clinical findings, the Court is unable to find that substantial evidence supports

27   the ALJ's finding that Dr. Sharma's opinion was inadequately supported by

28   objective medical findings.

Additionally, the ALJ discounted Dr. Sharma's opinion because he offered conclusions about Plaintiff's ability to work. AR 36. It is true that a treating physician's statement on an issue reserved to the Commissioner, such as the ultimate determination of whether a claimant is disabled, is not binding on the ALJ or entitled to special weight. See McLeod v. Astrue, 640 F.3d 881, 885 (9th Cir. 2011) ("The law reserves the disability determination to the Commissioner."); Ukolov v. Barnhart, 420 F.3d 1002, 1004 (9th Cir. 2005) ("Although a treating physician's opinion is generally afforded the greatest weight in disability cases, it is not binding on an ALJ with respect to the existence of an impairment or the ultimate determination of disability." (citation omitted)). The ALJ was, therefore, not bound by Dr. Sharma's assertions that Plaintiff was unable to work. However, the fact that a treating physician rendered an opinion on the ultimate issue of disability does not relieve the Commissioner of the obligation to state specific and legitimate reasons supported by substantial evidence for rejecting the balance of a treating physician's opinion. Reddick v. Chater, 157 F.3d 715, 725 (9th Cir.1998); Matthews v. Shalala, 10 F.3d 678, 680 (9th Cir.1993). This reason, therefore, was insufficient to reject Dr. Sharma's opinion about Plaintiff's limitations.

Finally, the ALJ appeared to discount Dr. Sharma's opinion because he "examined [Plaintiff] solely in the context of a personal injury claim." AR 37. Without evidence of actual impropriety, this observation is not a legitimate reason to discount Dr. Sharma's opinion. Lester, 81 F.3d at 832 ("The purpose for which medical reports are obtained does not provide a legitimate basis for rejecting them."); Reddick, 157 F.3d at 726 ("Our opinions reveal that the mere fact that a medical report is provided at the request of counsel or, more broadly, the purpose for which an opinion is provided, is not a legitimate basis for evaluating the reliability of the report."); McNeill v. Astrue, No. 10-1090, 2011 WL 871478, at *5 (C.D. Cal. Mar. 14, 2011) ("That [doctor] evaluated

1  plaintiff in the context of civil litigation . . . is not a valid reason to discount his
2  opinion.").

3      Although the ALJ also cited Plaintiff's activities of daily living and his
4  conservative treatment history as reasons for discounting Dr. Sharma's
5  opinion, the Court has, for the reasons discussed below, see Section B., infra,
6  reservations about those findings as well. The Court accordingly finds that the
7  reasons offered by the ALJ for rejecting the opinion of Plaintiff's treating
8  physician are not specific and legitimate, especially in light of the additional
9  records submitted to the Appeals Council.

10 **B.    Plaintiff's Credibility**

11     **1.    Background**

12     At the hearing, Plaintiff testified that he was not working because of
13 back and leg pain. AR 55. He also told the ALJ that he was drowsy because of
14 his pain medication. Id. He indicated that he was taking four to eight 350 mg
15 hydrocodone and two to four 350 mg Soma per day to manage the spasms and
16 pain. AR 49-50. His lawyer asked him if he could work at a job where he had
17 to "look[] at videos and if you saw something irregular all you had to do is
18 pick up the phone and call security." Plaintiff said that due to his "back pain . .
19 . [he has] to lay down at least for an hour out of the day, two hours." AR 56.

20     In September 2011, Plaintiff filled out a report that provide the following
21 information about his daily living  ("ADL"): he takes care of his own
22 grooming; he only goes outside to go to physical or mental therapy or his
23 primary physician and usually needs someone to accompany him; at home he
24 naps or plays video games; his sister cooks for him except twice a week when
25 he makes his own frozen dinners; walking and physical therapy are tiring; he is
26 unable to do any chores because they are tiring, although his sister encourages
27 him to do dishes; he is able to drive but does not because it frightens him; he
28 does not do any shopping; and he can only walk for 10 minutes before needing

rest. AR 239-46. Plaintiff told an examining psychiatrist in November 2011 that he was able to handle his person grooming, take care of household chores, cook, make snacks, go to the store, and run errands. AR 272. He said his hobbies included watching television. Id. Although he denied any significant activities, he indicated his "outside activities include running, bicycle riding, and hiking." Id.

The ALJ found that the Plaintiff's impairments could reasonably be expected to cause the alleged symptoms, but that Plaintiff's statements concerning the intensity, persistence and limiting effects of these symptoms were not entirely credible. AR 30. The ALJ cited the following reasons for discounting Plaintiff's credibility: (1) his allegations "are inconsistent with the objective medical evidence"; (2) Plaintiff never went to the emergency room or a county hospital notwithstanding allegations of a pain level of 7 or 8 with medication and 10 without medication; (3) Plaintiff did not seek no-cost treatment such as treatment at a public health clinic; and (4) Plaintiff engaged in "a somewhat normal level of daily activity and interaction," which "diminishes the credibility of the claimant's allegations of functional limitations." Id.

## 2. Applicable Law

To determine whether a claimant's testimony about subjective pain or symptoms is credible, an ALJ must engage in a two-step analysis. Vasquez v. Astrue, 572 F.3d 586, 591 (9th Cir. 2009) (citing Lingenfelter v. Astrue, 504 F.3d 1028, 1035-36 (9th Cir. 2007)). First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment which could reasonably be expected to produce the alleged pain or other symptoms. Lingenfelter, 504 F.3d at 1036. "[O]nce the claimant produces objective medical evidence of an underlying impairment, an adjudicator may not reject a claimant's subjective complaints based solely on a

8

1 lack of objective medical evidence to fully corroborate the alleged severity of
2 pain." <u>Bunnell v. Sullivan</u>, 947 F.2d 341, 345 (9th Cir. 1991) (en banc). To the
3 extent that an individual's claims of functional limitations and restrictions due
4 to alleged pain are reasonably consistent with the objective medical evidence
5 and other evidence, the claimant's allegations will be credited. SSR 96-7p,
6 1996 WL 374186 at *2 (explaining 20 C.F.R. §§ 404.1529(c)(4), 416.929(c)(4)).

7      If the claimant meets the first step and there is no affirmative evidence of
8 malingering, the ALJ must provide specific, clear and convincing reasons for
9 discrediting a claimant's complaints. <u>Robbins v. Soc. Sec. Admin.</u>, 466 F.3d
10 880, 883 (9th Cir. 2006). "'General findings are insufficient; rather, the ALJ
11 must identify what testimony is not credible and what evidence undermines
12 the claimant's complaints.'" <u>Reddick v. Chater</u>, 157 F.3d 715, 722 (9th Cir.
13 1998) (quoting <u>Lester v. Chater</u>, 81 F.3d 821, 834 (9th Cir. 1996)). The ALJ
14 must consider a claimant's work record, observations of medical providers and
15 third parties with knowledge of claimant's limitations, aggravating factors,
16 functional restrictions caused by symptoms, effects of medication, and the
17 claimant's daily activities. <u>Smolen v. Chater</u>, 80 F.3d 1273, 1283-84 & n.8 (9th
18 Cir. 1996)). The ALJ may also consider an unexplained failure to seek
19 treatment or follow a prescribed course of treatment and employ other
20 ordinary techniques of credibility evaluation. <u>Id.</u> (citations omitted).

21     **3.**    **Analysis**

22      Here, because there was no evidence of malingering in the record, the
23 ALJ was required to cite clear and convincing reasons for discounting
24 Plaintiff's credibility. <u>See</u> <u>Robbins</u>, 466 F.3d at 883. Having carefully reviewed
25 the record, the Court finds that the ALJ's reasons for rejecting Plaintiff's
26 credibility about his pain and limitations were not clear and convincing
27 reasons that are supported by substantial evidence.
28 ///

As an initial matter, even if the Court agreed that the objective evidence did not support the severity of Plaintiff's claims, an ALJ may not discredit a claimant's credibility on that basis alone. See Bunnell, 947 F.2d at 346-47 (noting that ALJ "may not discredit a claimant's testimony of pain and deny disability benefits solely because the degree of pain alleged by the claimant is not supported by objective medical evidence"); Robbins, 466 F.3d at 883 (ALJ may not disregard subjective symptom testimony "solely because it is not substantiated affirmatively by objective medical evidence"); Burch v. Barnhart, 400 F.3d 676, 681 (9th Cir. 2005) (same).

Turning to the ALJ's other findings, the Court cannot reconcile the record in this case with the ALJ's comments about Plaintiff's failure to seek treatment at the ER, a county hospital, or some other "no-cost" public health clinic. Failure to seek medical care can be substantial evidence undermining claims of debilitating pain. See Fair v. Bowen, 885 F.2d 597, 604 (9th Cir. 1989). Here, however, the record shows that Plaintiff has regularly and consistently sought treatment since his accident. The record reflects numerous orthopedic evaluations and physical therapy appointments from the months after the accident through February 2013. See AR 308-355, 483-503, 515-537, 576-588. During 2012, it reflects several epidural injections performed under general anesthesia in operation-like settings. See AR 442-55, 560, 563; see also Oldham v. Astrue, No. 09-1431, 2010 WL 2850770, at *9 (C.D. Cal. July 19, 2010) (finding that similar treatments "render any argument that Plaintiff's treatment was 'conservative' unconvincing").

Similarly, the Court cannot find support in the record for the ALJ's finding that Plaintiff's symptom testimony was undermined by his statements about his daily activities. The record shows that Plaintiff had fairly modest daily activities, such as caring for his personal hygiene, watching television and playing video games, making frozen dinners twice a week, and spending time

with his girlfriend at home.[2] Activities such as these are not sufficient to undermine claimant's testimony about his limitations. See Vertigan v. Halter, 260 F.3d 1044, 1050 (9th Cir. 2001) (holding that assisted grocery shopping, walking for an hour for exercise, swimming, socializing with friends, watching television, and reading were not inconsistent with disabling pain); Saunders v. Astrue, 433 F. App'x 531, 533 (9th Cir. 2011) (concluding that substantial evidence did not support ALJ's determination to discredit claimant's pain testimony on the basis of daily activities because "we have held consistently that, activities such as light household chores, cooking meals, and grocery shopping are activities that do not necessarily translate to the work environment"); Colquitt v. Astrue, No. 09-2099, 2010 WL 4718749, at *3 (C.D. Cal. Nov. 15, 2010) (finding ALJ erred in discounting credibility when claimant did limited cooking, could but did not drive, did laundry and grocery shopping with daughters' assistance, and sometimes walked with grandchildren to pool).

Thus, although the ALJ provided an analysis of the record to support his finding that Plaintiff's statements about the limitations presented by his impairments were not entirely credible, the ALJ failed to state any valid reason apart from the objective medical evidence for discounting Plaintiff's credibility. Accordingly, the Court finds that the ALJ failed to provide clear and convincing reasons for discounting Plaintiff's subjective complaints of pain and

---

[2] The ALJ also notes that Plaintiff told an examining psychiatrist that his outside activities include running, biking, and hiking. AR 30. The next paragraph of that report, however, also states that Plaintiff "denied any significant activities." See AR 272. It is thus unclear from the psychiatrist's report whether Plaintiff was indicating that he engaged in running, biking, and hiking after the accident or that he used to engage in those activities before he was injured.

limitations.

**C.**   **Whether to Remand for Further Proceedings**

The choice whether to reverse and remand for further administrative proceedings, or to reverse and simply award benefits, is within the discretion of the court. <u>Harman v. Apfel</u>, 211 F.3d 1172, 1178 (9th Cir. 2000) (holding that the district court's decision whether to remand for further proceedings or payment of benefits is discretionary and is subject to review for abuse of discretion). The Ninth Circuit has observed that "the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation." <u>Moisa v. Barnhart</u>, 367 F.3d 882, 886 (9th Cir. 2004) (quoting <u>INS v. Ventura</u>, 537 U.S. 12, 16 (2002) (per curiam)).

Where, as here, a claimant contends that he is entitled to an award of benefits because of an ALJ's failure to properly consider a physician's opinion or the claimant's testimony, the Court applies a three-step framework. First, the Court asks whether the ALJ failed to provide legally sufficient reasons for rejecting physician's opinion or the claimant's testimony. <u>Treichler v. Comm'r Soc. Sec.</u>, 775 F.3d 1090, 1103 (9th Cir. 2014). Second, the Court determines "whether further administrative proceedings would be useful," asking "whether the record as a whole is free from conflicts, ambiguities, or gaps, whether all factual issues have been resolved, and whether the claimant's entitlement to benefits is clear under the applicable legal rules." <u>Id.</u> at 1103-04. This Court must "assess whether there are outstanding issues requiring resolution <u>before</u> considering whether to hold that the claimant's testimony is credible as a matter of law." <u>Id.</u> at 1105. Third, if the Court concludes that no outstanding issues remain and further proceedings would not be useful, the Court may find the relevant testimony credible as a matter of law and then determine whether the record, taken as a whole, leaves "not the slightest uncertainty as to the outcome of the proceeding." <u>Id.</u> at 1101 (citations

omitted). Only when all three elements are satisfied does a case raise the "rare circumstances" that allow the Court to exercise its discretion to remand for an award of benefits. Id.

Here, the Court cannot find that the record taken as a whole leaves not the slightest uncertainty as to the outcome of the proceeding. Further administrative proceedings would therefore be useful. Remand is appropriate for the ALJ to reassess his credibility determination of Plaintiff and his treatment of the opinion of Plaintiff's treating physician consistent with this opinion.

## IV.

## CONCLUSION

For the reasons stated above, the decision of the Social Security Commissioner is REVERSED and the action is REMANDED for further proceedings consistent with this opinion.

Dated: September 17, 2015

_____

DOUGLAS F. McCORMICK
United States Magistrate Judge

13